116

Thompson, Admx., Appellant, *v.* Ohio Fuel Gas Co., Appellee.

(No. 39924—Decided March 1, 1967.)

117

*Mr. Nelson Lancione,* for appellant.

*Messrs. Wright, Harlor, Morris, Arnold & Glander, Mr. Rudolph Janata* and *Mr. Roger F. Strauss,* for appellee.

BROWN, J.   The petition charges that the defendant placed and maintained the pipe beneath and adjacent to the public road; that defendant was negligent in connection therewith in several respects; and that the defendant's negligence in one or more of these respects caused the explosion which resulted in the plaintiff's decedent's death.   Suffice it to say that the evidence as to some of the specifications of negligence was deficient, so that the ultimate question which confronted the trial judge at the close of the evidence involved the depth of the pipe and the sufficiency of the notice of the presence of the gas transmission line given by the defendant to the plaintiff's decedent under the particular circumstances of the case.

The case was considered to be of great general interest because of the holdings of the trial and appellate courts that it was necessary for the plaintiff to show as part of his case the custom and practice of other gas transmission companies in installing and maintaining similar gas transmission lines in order to provide a "standard of care" against which defendant's conduct might be judged.

Counsel for the appellee propose that the trial court did not err in requiring such affirmative evidence of custom and practice and claim that, where all factors involved as to how a standard of care should be exercised are not obvious to and

readily understandable by a lay jury, affirmative evidence of standards of care is essential.

We do not believe this to be the law. Mr. Justice Holmes in *Texas and Pacific Ry. Co.* v. *Behymer*, 189 U. S. 468, 47 L. Ed. 905, said: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

In 2 Harper and James on The Law of Torts 966, Section 17.1, beginning at page 966, we find:

"Except for malpractice cases (against a doctor, dentist, etc.) there is no general rule or policy requiring expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be received. * * * Courts could very easily expand the area in which expert testimony is required to establish the standard of conduct, but the tendency has been instead to resolve doubtful questions in favor of allowing the jury to decide the issue of negligence without its aid. * * *"

The recognized function of evidence of customs, general practice or standard operating procedures was pointed out in *Ault* v. *Hall*, 119 Ohio St. 422. Paragraphs three and four of the syllabus of that case read as follows:

"3. Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised.

"4. Methods employed in any trade, business or profession, however long continued, cannot avail to establish as safe in law that which is dangerous in fact."

Taft, J., in *Witherspoon* v. *Haft*, 157 Ohio St. 479, at page 482, another case in which it was argued that the defendant had followed customary practice and hence had complied with the standard of care established by others in his trade or calling, said:

"The real question in each case is whether reasonable minds could come to the conclusion that the defendant's con-

duct fell below the standard of ordinary care. Customary conduct or methods were circumstances to be considered with other circumstances in determining whether they could. Among the other circumstances to be so considered in each case was the serious danger involved as a consequence of the defendant's conduct. * * *''

As we see it, the problem which confronted the trial judge at the close of the evidence in this case was not the lack of evidence of a standard of care but rather the question of whether under the circumstances affirmatively shown by the plaintiff's evidence the defendant's conduct or methods fell short of ordinary prudence.

In determining in any given case whether a defendant exercised that care which an ordinarily and reasonably prudent man would have exercised under the same or similar circumstances, one of the most important of the circumstances is ''the potential danger apparently involved.'' *Schwer, Admx.,* v. *New York, Chicago & St. Louis Rd. Co.,* 161 Ohio St. 15, 21.

The danger here, as evidenced by the seriousness of the occurrence itself, was great. The remaining question was whether it was apparent. That is to say, should the defendant have foreseen this danger? The defendant company was charged with knowledge of the location of its pipe, and its agents testified that inspections were made at reasonable intervals. Since the pipe carrying explosive natural gas was in the public way it was also within the defendant's knowledge that persons other than agents of the defendant company would have legitimate purposes for being in the pipe's vicinity. Throughout the 30 years during which the pipe reposed undisturbed in the same location, agents of the defendant company knowing of the location of the pipe must have observed changes in the roadway and its adjacent ditches. Certainly the employees of the county engineer did, and they set about making what the evidence described as ''routine'' procedures to correct a drainage problem by cleaning and ''cutting'' the ditch preparatory to installing drain tile. The defendant says that it had no notice of the nature of the work which was to be done, hence could not foresee the danger. Knowledge of course is a prerequisite of liability for negligence. ''Foreseeability of

harm, in turn, unless it is to depend on supernatural revelation, must depend on knowledge.'' 2 Harper and James on The Law of Torts 907, Section 16.5. Would it be unreasonable for a jury to conclude under this evidence that the defendant company, knowing of the location of its pipe in relation to the public ditch, should have observed or anticipated that routine maintenance of the ditch might be accomplished by equipment of the sort used by plaintiff's decedent? We think not. With such foresight, one who had knowledge of the existence of the gas transmission line a mere 21 inches below the level of the road and a short distance below the bottom of the ditch might have anticipated everything except the exact time when the explosion would occur.

Judge Hart, in *Englehardt* v. *Philipps*, 136 Ohio St. 73, 78, pointed out that it is the defendant's superior knowledge of existing dangers or perils to persons going upon the property which is the basis of liability.

In *Witherspoon* v. *Haft, supra*, the defendants claimed that they were not notified that the bleachers which they constructed and installed were dangerous in use in that the top seat plank of this set of bleachers was so constructed that it would slip off the bracket in use and expose the user to the danger of falling backwards. Judge Taft for the court said reasonable minds could differ as to whether people of defendant's experience and familiarity with this type of bleachers should have recognized that they were hazardous.

Where it is found that any unreasonable risk of danger should have been foreseen, the investigation of those seeking to define the outer limit of actionable negligence must turn to the practicability of things the defendants should have done to avoid the risk.

Judge Learned Hand, in *Conway* v. *O'Brien*, 111 F. 2d 611, 612, comments that the amount of caution ''demanded of a person by an occasion is the resultant of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice to avoid the risk.''

This is the true basis of the decision of this court in the *Englehardt case, supra*, cited by the appellee as authority for

the proposition that evidence of custom or practice of other gas transmission companies in installing or maintaining such lines was required to establish a standard of care. That case involved a diving board which was claimed to have been made slippery by rain. It was decided upon the basis that the danger to persons using the facility was not great, that this danger was as apparent to the plaintiff as to the defendant and that there was an "impracticability of avoiding the presence of moisture on such * * * surfaces."

Again in *Republic Light & Furniture Co. v. Cincinnati*, 97 Ohio App. 532, cited and relied upon by the appellee, where water escaped from a city water line and damaged the plaintiff's merchandise, the court turned its decision upon the fact that "no substantial evidence appears justifying the conclusion that any feasible or reasonable method of inspection would have disclosed the imminence of a failure in the particular section of the main here involved." This must be the real basis for the judgment for if there were a feasible way of avoiding the damage liability would be imposed even though custom excused its use.

Judge Ross, as an additional ground for the decision, said:

"*In addition*, there was a complete failure in the attempt to show a standard of care employed by those situated similarly to the defendant. Proof of such standard of care is required. *Englehardt, a Minor, v. Philipps, supra.*"

We think that Judge Ross misinterpreted the *Englehardt case*, which turned upon slight danger, equally apparent to both parties and impractical of avoidance, and contained no statement that evidence of standard of care of others similarly situated was required.

We agree with counsel for the appellee that it would be impractical and not in the public interest to require transmission lines to be placed at such depth that they would not be hazardous to all persons who might carelessly strike them while excavating. However, the things which could have been done to avoid the danger in this instance both suggest themselves and are affirmatively shown by the evidence. The pipe could have been placed at a greater depth or it could have been marked so as to warn of its location and depth. The jury in these cir-

cumstances was capable and should have been permitted to determine whether the defendant's conduct was deficient by its standards.

Therefore, the judgment of the Court of Appeals is reversed and the cause is remanded to that court for it to pass upon the other assigned errors not considered or disposed of.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and WHITE, JJ., concur.

WHITE, J., of the Eighth Appellate District, sitting for SCHNEIDER, J.